DENNIS et al., Appellants,

v.

STATE FARM INSURANCE COMPANY, Appellee.

[Cite as *Dennis v. State Farm Ins. Co.* (2001), 143 Ohio App.3d 196.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 99 CA 78.

Decided May 15, 2001.

*Anzellotti, Sperling, Pazol & Small Co., L.P.A.,* and *Angela J. Mikulka,* for appellants.

*Williams, Sennett & Scully* and *Louis R. Militerno,* for appellee.

---

WAITE, Judge.

This timely appeal arises from a judgment entry of the Mahoning County Court of Common Pleas granting State Farm Insurance Company ("appellee") a protective order preventing Gus and Delores Dennis ("appellants") from deposing David Nuzzi, an insurance adjuster employed by appellee. Appellants filed a complaint against appellee seeking to collect underinsured motorist benefits on a policy issued to them by appellee. The deposition was requested during the discovery phase of the litigation. Appellee argues that Nuzzi is protected by the attorney-client privilege and work-product doctrine. For the following reasons, the judgment of the trial court is reversed.

On October 14, 1996, appellant Delores Dennis was injured when a car backing out of her driveway struck her. At the time of the accident she was covered by an automobile insurance policy issued by appellee that included underinsured motorist coverage. With appellee's permission, appellants exhausted the tortfeasor's insurance coverage. Appellants then attempted to recover underinsured motorist benefits from appellee but their claim was denied. On July 17, 1998, appellants filed a complaint against appellee in a further attempt to collect on the underinsured motorist provisions of their policy.

On January 21, 1999, appellants filed a notice of deposition of David Nuzzi, a claims specialist employed by appellee. On February 8, 1999, appellee filed a motion for a protective order to prevent appellants from taking Nuzzi's deposition. After a hearing, the trial court granted appellee's motion for a protective order on March 18, 1999, and this timely appeal followed.

Appellants' sole assignment of error states:

"The trial court abused its discretion in granting defendant-appellee's motion for protective order *in toto,* thereby preventing State Farm and its employee, David Nuzzi, from submitting to any deposition discovery."

Appellants argue that Civ.R. 26(B) allows discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action." They contend that the Civil Rules make no exception for deposing employees of insurance carriers and that there was nothing unusual about their January 21, 1999 notice of deposition regarding adjuster Nuzzi. Appellants argue that Civ.R. 30(A) enables a party to compel another party to submit to a deposition upon oral examination by giving that party proper notice as prescribed in Civ.R. 30(B). They assert that appellee identified Nuzzi as one of its employees who had knowledge of the facts of the case. Appellants conclude that they gave appellee proper notice of their intent to depose appellee's designated representative and that they were entitled to that deposition.

 Appellee correctly observes that a trial court ruling relating to discovery issues is reviewed on appeal for abuse of discretion. *Arnold v. Am. Natl. Red Cross* (1994), 93 Ohio App.3d 564, 575, 639 N.E.2d 484, 491. An abuse of discretion connotes more than an error of law or judgment; it implies an attitude that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142.

Appellee contends that a trial court is given authority to grant discovery protective orders under Civ.R. 26(C) to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." Appellee argues that it is within the province of the trial court to issue a protective order to prevent discovery of privileged information. Appellee asserts that the existence of a privilege is a discretionary determination to be made by the trial court. *State ex rel. Greater Cleveland Regional Transit Auth. v. Guzzo* (1983), 6 Ohio St.3d 270, 271, 6 OBR 335, 336–337, 452 N.E.2d 1314, 1315. Appellee maintains that the trial court was justified in granting the protective order because appellants were indirectly attempting to obtain documents protected by the work-product privilege and because Nuzzi had no relevant information to add to the case outside of the information contained in the claims file.

 Turning to the arguments presented, it is true that a trial court has broad discretion in regulating the discovery process. *Breech v. Turner* (1998), 127 Ohio App.3d 243, 248, 712 N.E.2d 776, 779–780. That discretion is not unlimited, however, but is reviewed on appeal for an abuse. *Id.* The trial court is also subject to the procedures and limitation set forth in the Ohio Rules of Civil Procedure pertaining to discovery. Civ.R. 26(B) allows for broad discovery of any unprivileged matter relevant to the subject matter of the underlying litiga-

tion and that, at least, "appears reasonably calculated to lead to the discovery of admissible evidence." Depositions are an accepted discovery device and Civ.R. 30(A) provides a means whereby a party can compel the attendance of another party at a deposition. During the course of a deposition a party may request the court by way of a motion to limit or terminate the deposition upon a showing that it is being conducted in bad faith or to annoy, embarrass, or oppress the deponent or party. Civ.R. 30(D).

A party from whom discovery is sought may also request the court to issue a protective order limiting discovery in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Civ.R. 26(C). A party seeking such a protective order must also satisfy the following requirement:

"Before any person moves for a protective order under this rule, that person shall make a reasonable effort to resolve the matter through discussion with the attorney or unrepresented party seeking discovery. A motion for a protective order shall be accompanied by a statement reciting the effort made to resolve the matter in accordance with this paragraph." *Id.*

The record reflects that appellee did not include any such statement with its February 8, 1999 motion for a protective order. Appellee's failure to satisfy the requirements of Civ.R. 26(C) is a sufficient reason to vacate the March 18, 1999 protective order. Nevertheless, even if appellee had satisfied the requirements of the Civil Rules, we would still be compelled to reverse the decision of the trial court. This is due to the fact that the work-product doctrine does not bar appellants from taking Nuzzi's deposition and because Nuzzi's testimony is relevant to the subject matter of this case even if he has no knowledge of any facts outside of those contained in the claims file.

The work-product doctrine emanates from the United States Supreme Court decision *Hickman v. Taylor* (1947), 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451. *Hickman* was concerned that the attorney-client privilege was not broad enough to protect the memoranda, briefs, notes, and other writings prepared by counsel for his or her own use during the course of pursuing a case. *Id.* at 508, 67 S.Ct. at 392, 91 L.Ed. at 460–461. The court reasoned that if such materials did not receive some protection during the discovery phase of litigation, much of what is normally put down in writing, such as interviews, statements, legal theories, opinions, and mental impressions, would never be written down, ultimately causing the interests of the client to suffer. *Id.* at 511, 67 S.Ct. at 393–394, 91 L.Ed. at 460–461. The *Hickman* work-product doctrine now protects all materials prepared in anticipation of litigation, and gives almost absolute protection to the opinions, conclusions, judgments, and legal theories of a client's attorney. *Id.* at 511, 67 S.Ct. at 393–394, 91 L.Ed. at 462–463; *State v. Hoop* (1999), 134 Ohio

App.3d 627, 642, 731 N.E.2d 1177, 1187–1188; *Frank W. Schaefer, Inc. v. C. Garfield Mitchell Agency, Inc.* (1992), 82 Ohio App.3d 322, 329, 612 N.E.2d 442, 446–447.

Civ.R. 26(B)(3) codifies Ohio's version of the work-product doctrine as it pertains to civil cases:

"Trial preparation: materials. Subject to the provisions of subdivision (B)(4) of this rule, *a party may obtain discovery of documents and tangible things prepared in anticipation of litigation* or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing of good cause therefor. A statement concerning the action or its subject matter previously given by the party seeking the statement may be obtained without showing good cause. A statement of a party is (a) a written statement signed or otherwise adopted or approved by the party, or (b) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement which was made by the party and contemporaneously recorded." (Emphasis added.)

Appellee's reliance on Civ.R. 26(B)(3) as a basis for the trial court's decision to grant a discovery protection order is misplaced. First, Civ.R. 26(B)(3) by its very terms applies only to discovery of "documents and tangible things," whereas appellants attempted to take an oral deposition of one of appellee's employees. There is nothing in Civ.R. 26(B)(3) that can be read as a limitation on a party's right to initiate the oral deposition of an opposing party. If appellants had desired to examine the documents in the claims file, they would have needed to make a request for production of documents pursuant to Civ.R. 30(B)(4) and Civ.R. 34, which was not done. If, after the deposition had commenced, appellee concluded that other privileged information or material was about to be divulged, appellee's counsel could have made timely objections or filed a motion with the court to limit or terminate examinations as provided by Civ.R. 30(C) and (D).

Appellee relies on *Breech v. Turner* (1998), 127 Ohio App.3d 243, 712 N.E.2d 776, for the proposition that Civ.R. 26(B) protects the information in an insurance claim file from discovery rather than merely protecting the documents themselves. We do not interpret *Breech* so broadly. The issue in *Breech* was whether a third party could obtain discovery of statements made by an insured to his insurance adjuster regarding an automobile accident. *Id.* at 247, 712 N.E.2d at 779. The third party had sued the insured for negligence in allowing his cows to wander on a nearby road, which led to the accident. The documents in question allegedly contained evidence that the insured told the adjuster that he had seen his cows on the road.

■ The *Breech* court held that the trial court was within its discretion to deny the plaintiff's motion to compel discovery of statements made by an insured which were recorded by the insured's liability insurer and that were then passed on to the lawyer representing the insured pursuant to the insurance contract. *Id.* at 250, 712 N.E.2d at 781 see, also, *In re Klemann* (1936), 132 Ohio St. 187, 7 O.O. 273, 5 N.E.2d 492, paragraph one of syllabus. The rationale for prohibiting discovery of such statements is that the insurance company is required to take such statements from its insureds to prepare a defense and is normally required to provide defense counsel to the insured as part of its coverage. Any statements made by the insured in this context are in essence communications intended for defense counsel and therefore fall under the protective umbrella of the attorney-client privilege. *Breech,* 127 Ohio App.3d at 250, 712 N.E.2d at 781; *Klemann* at 194, 7 O.O. at 276–277, 5 N.E.2d at 495.

■ The situation in the case at bar is quite different. This matter does not involve a third party attempting to obtain discovery of an insured's statements made to its own insurance adjuster or defense counsel. The insureds are attempting to depose a representative of their own liability carrier in a contract dispute over coverage issues. Although no Ohio cases appear to be directly on point, other jurisdictions have clearly distinguished third-party cases such as *Breech* and *Klemann* from first-party contract dispute cases such as the instant one, and have allowed the insured to depose the adjuster and to have access to the claims file. *Tayler v. Travelers Ins. Co.* (N.D.N.Y.1998), 183 F.R.D. 67, 70–71; *Reavis v. Metro. Property & Liability Ins. Co.* (S.D.Ca.1987), 117 F.R.D. 160, 164.

*Tayler,* although dealing with Fed.R.Civ.P. 26(b)(3) rather than Ohio's equivalent rule, is particularly instructive because it dealt with an insured attempting to depose its uninsured motorists liability carrier. The *Tayler* court distinguished the typical two-vehicle personal injury case from an uninsured motorist case. *Id.* at 71. The court noted that in a two-vehicle accident (1) there is no insurance contract between the injured person and the other driver or his carrier, (2) a personal injury loss exists, (3) the carrier denies that its insured is liable for damages, (4) an adversarial relationship exists between the injured party and the insured, and (5) the trial issue is the amount of the injured party's legal damages against the insured. *Id.* In contrast, in an uninsured motorist case (1) there is an insurance contract between the injured person and the carrier, (2) a personal injury loss exists, (3) the carrier denies that legal damages exist or are as extensive as claimed by the insured injured person, (4) an adversarial relationship arises between the insured and the carrier, and (5) the trial issue is the amount of the injured person's legal damages against the insurance carrier pursuant to the insurance contract. *Id.*

The *Tayler* court reasoned that when an insurance company investigates a third-party claim it is doing so in defense of its insured with an eye towards litigation if the claim is denied. *Id.* On the other hand, an insurer's research into a typical uninsured motorists claim is done as part of its normal routine business pursuant to the contract that exists between the insured and the carrier. *Id.* "When a first party claim between an insured and his/her insurer is at issue, the insured 'is asking for payment under the terms of the insurance contract between him and the insurance company, and the insurance company owes [the insured] a duty to adjust his claim in good faith. There is no initial contemplation of litigation.'" *Id.*, quoting *Weitzman v. Blazing Pedals, Inc.* (D.Colo.1993), 151 F.R.D. 125, 126.

This same reasoning was used by the Ohio Supreme Court in the recent case of *Boone v. Vanliner Ins. Co.* (2001), 91 Ohio St.3d 209, 744 N.E.2d 154. The question in *Boone* was whether in a bad-faith denial-of-coverage claim an insured was able to discover documents in the claims file containing attorney-client communications. *Id.* at 210, 744 N.E.2d at 155–156. The court held that "in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage. At that stage of the claims handling, the claims file materials will not contain work product, *i.e.*, things prepared in anticipation of litigation, because at that point it has not yet been determined whether coverage exists." *Id.* at 213–214, 744 N.E.2d at 158. The court's reasoning would apply just as well to deposing the claims adjuster about materials in the claims file that existed prior to the filing of a complaint. If the claims file itself is not protected prior to the time the claim is denied, then there is no reason to prohibit the insured from deposing the claims adjuster even if the purpose of the deposition is to obtain that unprotected information.

Ohio's Civ.R. 26(B)(3), like the federal rule at issue in *Tayler, supra,* only protects work-product, "in anticipation of litigation." The rule does not protect the ordinary work-product of an underinsured motorist carrier during the initial investigation of a claim made by one of its insureds. Thus, Civ.R. 26(B)(3) would not prevent the taking of a deposition of the insurance adjuster responsible for the claims file, at least in relation to aspects of the file created prior to litigation with the insured. Therefore, at minimum, appellants should have been permitted to depose Nuzzi about matters arising prior to the initiation of this present litigation, unless the trial court granted the protective order for some other reason.

The trial court's March 18, 1999 order does not give any reason it was granted. The only other reason for granting the protective order argued by

appellee was that Nuzzi could not have any relevant information to contribute to the discovery process. This argument is not well taken. Civ.R. 26(B)(1) provides for a very broad scope of discovery:

"Unless otherwise ordered by the court in accordance with these rules, the scope of discovery is as follows:

"(1) In general. *Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action,* whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial *if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.*" (Emphasis added.)

■ The concept of relevancy as it applies to discovery is not to limit it to the issues in the case, but to the subject matter of the action, which is a broader concept. *Nilavar v. Osborn* (2000), 137 Ohio App.3d 469, 499, 738 N.E.2d 1271, 1292–1293; *Tschantz v. Ferguson* (1994), 97 Ohio App.3d 693, 715, 647 N.E.2d 507, 521–522. The rule permits discovery of information so long as it is "reasonably calculated to lead to the discovery of admissible evidence." Civ.R. 26(B)(1).

■ An insurer has a duty to act in good faith in the processing of the claims of its insured. *LeForge v. Nationwide Mut. Ins. Co.* (1992), 82 Ohio App.3d 692, 697, 612 N.E.2d 1318, 1321–1322. "[W]hen an [insurer] insists that it was justified in refusing to pay a claim of its insured because it believed there was no coverage of the claim, ' * * * such a belief may not be an arbitrary or capricious one. The conduct of the insurer must be based on circumstances that furnish reasonable justification therefor.' " *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 277, 6 OBR 337, 341, 452 N.E.2d 1315, 1320, quoting *Hart v. Republic Mut. Ins. Co.* (1949), 152 Ohio St. 185, 188, 39 O.O. 465, 466, 87 N.E.2d 347, 349. Although appellants' cause of action only raises a contract dispute and does not allege the separate tort of bad faith handling of the insurance claim, the issue of appellee's good faith or bad faith in denying coverage is certainly related to the subject matter of this action. Nuzzi's lack of direct knowledge of the underlying automobile accident does not mean that he does not have relevant information as to the reasons why appellants' claim was denied. In fact, Nuzzi's *lack* of knowledge of the claims file or underlying accident may be very relevant to appellants' attempt to thoroughly investigate the full subject matter of this

action. Therefore, appellee's argument that Nuzzi could not possibly have relevant discoverable information is not well taken.

Although the trial court's discretion in matters of discovery is very broad, we must conclude that the trial court abused its discretion in arbitrarily granting appellee's motion for a discovery protection order where (1) there was no actual basis for the protection order centered on either the work-product doctrine or on a theory of lack of relevance as argued in appellee's original motion for a protective order, and (2) appellee failed to provide the trial court with a written statement reciting the effort made to resolve the discovery dispute as required by Civ.R. 26(C).

Appellants' assignment of error is well taken, and the judgment of the trial court is reversed and this cause remanded for further proceedings according to law and consistent with this court's opinion.

*Judgment reversed*
*and cause remanded.*

VUKOVICH, P.J., and GENE DONOFRIO, J., concur.